FILED

2008 Jan-17  PM 02:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| GRANT KNIGHT, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 7:05-CV-02461-LSC |
| | ] | |
| INSULSPAN, INC. | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration defendant Insulspan Inc.'s ("Insulspan") Motion for Summary Judgment, which was filed on August 31, 2007.  (Doc. 25.)  The plaintiff, Grant Knight, filed suit on November 30, 2005  against Insulspan, Gulf South Panels, LLC ("Gulf South") and Harper C. Chambers, Jr. ("Chambers") for fraud, misrepresentation, fraudulent suppression of material facts, negligence and wantonness, and breach of contract.  (Doc. 1.)  On June 6, 2006, all of Plaintiff's claims against Defendants Gulf South and Chambers were dismissed.  (Doc. 10.) Plaintiff has conceded that his claims against Insulspan based upon breach of

contract are due to be dismissed.  (Doc. 30.)   The only claims remaining in this case are Plaintiff's claims against Insulspan for fraud, misrepresentation, fraudulent suppression of material facts, and negligence and wantonness.   Insulspan has moved for summary judgment on all of Plaintiff's claims.  (Doc. 25.)  The issues raised in Defendant's motion have been briefed by both parties and are now ripe for decision.   Upon full consideration, Defendant's motion is due to be granted.

II.    Facts.[1]

In July of 2003, Plaintiff contacted the main offices of Insulspan  to inquire as to how to get Insulspan products.  (Knight Dep.)  Plaintiff claims that someone at Insulspan told him that he would have to go through a dealer or an Insulspan representative, and could not buy the product directly from Insulspan.[2]   *Id*. at 33.    After attempting to contact an

---

[1]The facts set out in this opinion are taken from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the non-moving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).   These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[2]Fred Baker, President of Insulspan at the time of the contact with Knight and the contract with Gulf South, stated that Insulspan's policy was to sell products through a

Insulspan dealer in Oklahoma, Plaintiff contacted Chambers, the Insulspan

representative in the State of Alabama.  *Id.* at 33-35.

On December 17, 2003, Plaintiff entered into an Agreement with Gulf

South (the "Agreement") for the purchase of structural insulated panels

("SIPs").  (Doc. 25.)  The Agreement, which expressly provided that it was

between Gulf South and Knight, required Gulf South to provide Plaintiff with

SIPs, manufactured by Insulspan, and all of the necessary accessories to

complete the installation of the SIPs.  (Doc. 24.)  Installation of the SIPs was

not included in the agreement; however, the Agreement did state that Gulf

South "will provide a trained SIPs installer for two days to provide technical

assistance" to Plaintiff.  (Chambers Aff. Ex. 3 at ¶ VII.)  In addition, the

Agreement contained a provision stating that the Agreement and any

attachments "constitute the entire agreement of the parties, and that the

Buyer acknowledges that the Buyer has not relied upon any oral or written

statements, undertakings, or representations and that no prior agreement

or understanding shall be valid."  *Id.* at ¶ XIII.  Plaintiff also acknowledged

---

dealer, if there was a dealer in the area; however, if there was not a dealer in the area
or if Plaintiff asked to deal directly with Insulspan, Insulspan would sell products directly
to the customer.  (Baker Dep. at 23, 29.)

that he did not enter into any further written agreements with Gulf South. (Doc. 25.)

After being contacted by Knight, Gulf South contracted with Harmony Exchange, and employed Nancy Harrison to design the plans for constructing Plaintiff's house using the Insulspan panels.  (Doc. 25.)

On December 19, 2003, Plaintiff sent a check to Gulf South in the amount of $19,554.80 in accordance with the payment terms of the Agreement.  (Doc. 24 at ¶ 2.)  Then, around June 3, 2004, Plaintiff issued a check to Gulf South in the amount of $37,996.14.  *Id.* at ¶ 3.  Gulf South then made a wire transfer to Insulspan on June 11, 2004 in the amount of $31,200.  (Doc. 25.)

At some point, after June 18, 2004, Plaintiff received a delivery of Insulspan panels.  (Doc. 24.)  Along with the shipment of SIPs, Insulspan included an installation guide specifying how to install the panels.  (Doc. 25.)  Plaintiff did not follow the specifications in the installation guide, but rather built the house in reverse order.  *Id.*  Plaintiff acted as the general contractor for the construction of his house.  *Id.*  He did not utilize a qualified general contractor to finish the project, even after encountering

problems in the construction.[3]  *Id.*

In the construction of the house, Plaintiff has alleged that he encountered various problems due to the negligence of Gulf South, Chambers, and Insulspan.   Plaintiff alleges that one panel did not have a "chase," which is used to run electrical wires; however, Plaintiff admits that the electrical wiring in his house is in the desired locations.[4]  *Id.*   In addition, Plaintiff concedes the alleged problems he encountered did not diminish the house's market value.  *Id.*  Plaintiff did not notify Insulspan of any of the alleged problems regarding the electrical chase, panel dimensions, or installation until this lawsuit was filed.  *Id.*

While Knight did not have a contractual relationship with Insulspan, Insulspan did have a contract with Gulf South, under which Gulf South was to act as an independent distributor of Insulspan panels.  On January 10, 2002, Chambers sent Insulspan's President, Frank Baker, an e-mail seeking to distribute Insulspan products.  (Chambers Aff. Ex. 2.)  In this e-mail,

---

[3]Don Knight, Plaintiff's brother, provided calculations and advice in the building process. (Doc. 25.)

[4]However, Plaintiff alleges that this defect caused delays in assembly and cost Knight enormous amounts of time and expense.  (Doc. 30.)

Chambers described his background and experience as a homebuilder, with ten years of experience, and with fifteen years of experience in his family's building supply business.  *Id.*  After receiving this e-mail, Insulspan entered into an Independent Distributor Agreement with Gulf South, dated January 29, 2002,  which made Gulf South a distributor of Insulspan panels.  (Baker Dep. Ex. 2.)  Pursuant to the agreement, Gulf South had the right to promote and sell Insulspan panels.  *Id.*  The Independent Distributor Agreement expressly stated that "the relation created by the agreement is that of an Independent Contractor," indicating that Gulf South was not an employee of Insulspan.  *Id.*  Insulspan did not have any control over the daily operations or the manner of work performed by Gulf South or Chambers.  (Doc. 25.)

Nonetheless, Insulspan does require its distributors to adhere to certain standards.  The Independent Distributor Agreement recited that Gulf South "is a person or entity having experience and expertise in the sale of residential and commercial construction materials."  (Baker Dep. Ex. 2 at 52.)  In addition, the Independent Distributor Agreement provides that Gulf South is required to adhere to the quality standards of Insulspan.  *Id.* at  62.

In order to comply with this requirement, Chambers attended two Insulspan training session, one in April of 2002 and one in March of 2003.  (Doc. 25; Kehoe Dep. at 10.)  Insulspan allegedly was not aware of any lawsuits filed against Chambers or any bankruptcy actions filed by Chambers.  (Doc. 25.)

Plaintiff contends that Insulspan fraudulently misrepresented that Chambers and/or Gulf South were qualified; fraudulently suppressed Chambers's lack of qualifications; and negligently authorized Gulf South to serve as a dealer and negligently trained and supervised Chambers and Gulf South.  (Doc. 24.)

III.    Standard of Review.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d at 1224 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

"[A]t the summary judgment stage the judge's function is not to weigh

the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986).  However, judges are not "required to submit a question to a jury merely because some evidence has been introduced by a party having the burden of proof, unless the evidence be of such character that it would warrant the jury finding a verdict in favor of that party.  *Id.* at 251 (*quoting Wilkerson v. McCarthy*, 336 U.S. 53, 62 (1872)).  "This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under governing law, there can be but one reasonable conclusion as to the verdict."  *Id.* at 250.

IV.    Discussion.[5]

A.    Fraudulent Misrepresentation.

In Count I of his Complaint, Plaintiff alleges a claim for fraud / misrepresentation.  Defendant argues that summary judgment should be

---

[5]Chambers was a member and manager of Gulf South during the period relevant to this case.  (Chambers Aff.)  Plaintiff, in his claims, relies on the acts of Chambers and Gulf South; therefore, throughout this discussion, Chambers and Gulf South will be used interchangeably as necessary and will be referred to as Chambers/Gulf South.

granted on Plaintiff's fraudulent misrepresentation claim because (1) Plaintiff failed to plead with particularity; (2) the promissory misrepresentation claim is specious; and (3) Plaintiff cannot establish all of the elements of the fraud claim.  (Doc. 25.)  Each of these will be discussed below.

      1.    Failure to Plead with Particularity.[6]

Defendant argues that Plaintiff's fraud claims are due to be dismissed on the ground that they are not pled with particularity as required under Federal Rule of Civil Procedure 9(b).  (Doc. 25.)

Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  FED. R. CIV. P. 9(b)(2007).  In order to satisfy Rule 9(b), "a plaintiff must plead 'facts as to time, place, and substance of the defendant's alleged fraud,' specifically 'the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them."  *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357

---

[6]The procedure for pleading fraud in federal courts is governed by federal law and not state law, even in diversity suits. *See McAllister Towing & Transp. Co., Inc. v. Thorn's Diesel Service, Inc.*, 131 F. Supp. 2d 1296, 1302 (M.D. Ala. 2001).

(11th Cir. 2006); *see also Aeropower, Ltd. v. Matherly,* 511 F. Supp. 2d 1139, 1149-50 (citing *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.,* 290 F.3d 1301, 1310 (11th Cir. 2002))(stating that a plaintiff must plead  (1) the statements, documents or misrepresentations made, (2) the time, place, and person responsible for making such statement, (3) the content of such statements and the manner in which these statements misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud). However, "this does not require every element to be stated with particularity, but rather the 'pleader must use more than generalized or conclusory statements setting out the fraud.'" *Buckmasters, Ltd. v. Action Archery, Inc.,* 915 F.Supp. 1188, 1194 (M.D. Ala. 1996)(quoting *Mays v. United Ins. Co. of Am.,* 853 F. Supp. 1386, 1389 (M.D. Ala. 1994).  The Rule "does not require that the complaint explain the plaintiff's theory of the case, but only that it state the misrepresentation, omission, or other action or inaction that the plaintiff claims is fraudulent." *Id.*  In addition to pleading with particularity in the complaint, courts have held that alternate methods "are also available to satisfy the rule." *Durham v. Bus. Mgmt. Assocs.,* 847 F.2d 1505, 1512 (11th Cir. 1988); *see also Seville Indus. Mach.*

*Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984), cert. denied, 469 U.S. 1211 (1985); *Shared Network Techs., Inc. v. Taylor*, 669 F. Supp. 422, 429 (N.D. Ga. 1987).[7]

Rule 9(b) "serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370-71 (11th Cir. 1997)(citations omitted).  Also, Rule 9(b) provides fair notice of the alleged fraud to the opposing party.  *Buckmasters, Ltd.,* 915 F. Supp. at 1194.  However, the application of this Rule "must not abrogate the concept of notice pleading."  *Durham*, 847 F.2d at 1511.

Here, the court finds that any confusion as to what Knight was claiming as a fraudulent misrepresentation has since been clarified by Plaintiff's response to the motion for summary judgment.  *See Durham,* 847 F.2d at 1511-12 (where the court held that the statements in the amended

---

[7]*See also Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 568-69 (11th Cir. 1994)(the court stated that the plaintiff did not plead with particularity all the allegations of fraud; however, the court held that plaintiff was entitled one chance to amend the complaint to bring it into compliance and therefore allowed plaintiff to amend the complaint as to comply with Rule 9(b)).

complaint and the affidavits before the court on a motion for summary judgment were sufficient to satisfy Rule 9(b)); *see also Buckmasters, Ltd.,* 915 F. Supp. at 1195 (where court held that the information contained in Buckmasters' motion for summary judgment was sufficient as to satisfy the particularity requirements).  In Plaintiff's response, he sets out specifically the alleged misrepresentations upon which he bases his fraud claims.[8] (Doc. 30.)  Therefore, the allegations contained in the Complaint and in Plaintiff's response to the motion for summary judgment are deemed to satisfy Rule 9(b).  *See Durham,* 847 F.2d at 1511-12.

In addition, this Court finds persuasive the holding of *Buckmasters, Ltd. v. Action Archery, Inc.,* where Judge Dement stated that "the fact that the defendants never challenged the sufficiency of the pleadings in a Rule 12(b)(6) motion for failure to state a claim, nor . . .move[d] for a more

---

[8]Plaintiff asserts that Insulspan represented to him:
>    (1) that he would have to purchase Insulspan products through Chambers/Gulf South Insulspan (or some other dealer) and could not purchase panels direct from the home office. [Knight Dep. at 33, *ll.* 7-9; 72, *ll.* 1-7]; and
>    (2) that Chambers and Gulf South Insulspan were qualified to sell Insulspan panels and provide technical assistance in the assembly process. [Knight Dep. at 69, *ll.* 19-22]

(Doc. 30 at 15.)

definite statement under Rule 12(e)" was persuasive in finding that the plaintiff had provided the defendants with sufficient notice of the alleged fraud pursuant to Rule 9(b).  915 F. Supp. at 1195.  Similarly, in this case, Insulspan has neither filed a motion to dismiss nor a motion for a more definite statement in regard to Knight's fraud claim.   Based on the foregoing, the court finds that Plaintiff has provided Insulspan with sufficient notice of the alleged fraud as required under Rule 9(b). Insulspan's motion for summary judgment is not due to be granted because of a failure to plead the alleged fraud with particularity.  Thus, this court will consider whether summary judgment as to Plaintiff's fraud claims is otherwise appropriate.

2.    Promissory Misrepresentation.

Defendant claims that the representations made by Insulspan, those contained in the promotional material sent to Plaintiff and those made in a telephone call, do not support a promissory misrepresentation claim,[9]

---

[9]While Plaintiff does not expressly assert a promissory misrepresentation claim, Defendant asserts that it should be characterized as a claim of promissory fraud because all the alleged misrepresentations relate to future events.  (Doc. 25.)  Plaintiff contends that these representations involve "then-existing facts."  (Doc. 30.)

arguing that the claim is without real merit.[10]  (Doc. 25.)

When the alleged fraudulent misrepresentation involves "a promise to perform future acts," the fraud claim is characterized as a promissory fraud. *Wiggins v. Risk Enter. Mgmt.*, 14 F. Supp. 2d 1279, 1288 (M.D. Ala. 1998) (citing *First Bank of Boaz v. Fielder*, 590 So. 2d 893, 897 (Ala. 1991), *overruled on other grounds by Life Ins. Co. v. Green,* 719 So. 2d 797 (Ala. 1998)).  In order to establish a claim of promissory misrepresentation, a plaintiff must prove, in addition to the elements of fraud,[11] that at the time the misrepresentation was made there was "an intent not to do the act

---

[10]Defendant argues that the alleged misrepresentations in the promotional material, that "Insulspan panels can be built faster" and that "Insulspan will work with you . . . to ensure you get the maximum benefits from Insulspan panels" (Baker Dep. Ex. 3),  sent to Plaintiff amounts to mere puffery and therefore cannot support a claim for misrepresentation.  (Doc. 25.)  According to the Alabama Supreme Court, "statements of opinion amounting to nothing more than 'puffery' or predictions as to events to occur in the future are not statements concerning material facts upon which individuals have a right to act and, therefore, will not support a fraud claim."  *McGowan v. Chrysler Corp.*, 631 So. 2d 842, 846 (Ala. 1993)(quoting *Fincher v. Robinson Bros. Lincoln-Mercury, Inc.*, 583 So. 2d 256, 259 (Ala. 1991).  Plaintiff concedes that the statements in the promotional letter amount to nothing more than puffery, opinion, or predictions as to future events.  (Doc. 30 at 18.)  Therefore, these statements cannot form the basis of Plaintiff's fraudulent misrepresentation claim.

[11]The elements of fraud include: (1) a false representation, (2) of an existing material fact; (3) that is reasonably relied upon; and (4) that plaintiff was damaged as a proximate result of the reliance.  *Bodie v. Purdue Pharma Co.*, 236 Fed. App. 511, 524 (11th Cir. 2007)(citing *Prestwood v. City of Andalusia*, 709 So. 2d 1173, 1175 (Ala. 1997)).

promised, and such a promise must have been given with the intent to deceive." *Valley Props., Inc. v. Strahan*, 565 So. 2d 571, 579 (Ala. 1990); *Byrd v. Lamar*, 846 So. 2d 334, 343 (Ala. 2002).  The "law places a heavier burden in those fraud actions where one attempts to prove fraud based on a misrepresentation relating to an event to occur in the future" by requiring the plaintiff to establish that "the promisor had no intention of carrying out the promises, but rather had a present intent to deceive" at the time the alleged promises were made.  *Nat'l Sec. Ins. Co. v. Donaldson*, 664 So. 2d 871, 876 (Ala. 1995); *Hearing Sys., Inc. v. Chandler*, 512 So. 2d 84, 87 (Ala. 1987).

Here, Plaintiff has presented no evidence that Insulspan did not intend to perform the act promised or that any promise made by Insulspan was done with the intent to deceive.  Since Plaintiff has not presented evidence sufficient to establish that there is a genuine issue of fact as to whether Insulspan made the alleged misrepresentations with a present intent to deceive or as to whether Defendant intended not to perform in accordance with the statements at the time that they were allegedly made, Insulspan

cannot be held liable under a claim of promissory fraud.[12]

### 3. Fraudulent Misrepresentation Claim.

This Court will also consider the same alleged misrepresentations under a theory of fraudulent misrepresentation. Plaintiff alleges that Defendant fraudulently misrepresented information about its policies and its dealer. (Doc. 30.) Plaintiff alleges that Defendant fraudulently misrepresented that Plaintiff "could not purchase directly from Insulspan's home office" and that "its dealer-representatives were qualified and competent to handle all of Knight's sales and technical advise needs." *Id.* at 15.

In order to establish a claim of fraud, the plaintiff must establish "(1) a false representation, that is, proof that the defendant made an untrue statement; (2) of an existing material fact; (3) that is reasonably relied upon; and (4) that plaintiff was damaged as a proximate result of the

---

[12]While Defendant claims that all of the alleged misrepresentations involved promises as to future events indicating that the fraud claim should be analyzed solely under a promissory fraud theory, this Court believes that Defendant has mischaracterized at least some of the claims and that the alleged misrepresentations should be analyzed under a fraudulent misrepresentation theory as well.

reliance."[13] *Bodie v. Purdue Pharma Co.*, 236 Fed. App. 511, 524 (11th Cir. 2007)(citing *Prestwood v. City of Andalusia*, 709 So. 2d 1173, 1175 (Ala. 1997)); *Bill Barnes Enters., Inc. v. Williams*, --- So. 2d ----, 2007 WL 2812768, *5 (Ala. Sept. 28, 2007).   In the legal sense, fraud "is misrepresentation of a material fact of such a nature that would induce an injured party to take such action." *Valley Props., Inc.*, 565 So. 2d at 579 (citing *Reeves v. Porter*, 521 So. 2d 963 (Ala. 1988)). "A false representation, even if made innocently or by mistake, operates as a legal fraud if it is a material fact that is acted upon with belief in its truth." *Davis v. Stern, Agee & Leach, Inc.*, 965 So. 2d 1076, 1091 (Ala. 2007). In addition, it is not enough for there to be a misrepresentation.  In order to recover on a fraud claim, a plaintiff must prove that he acted on the other party's false representations. *Hunt Petroleum Corp. v. State*, 901 So. 2d 1, 5 (Ala. 2004). The test for determining whether a plaintiff has relied is generally whether he would have acted in the same manner in the absence of the

---

[13]"Alabama law defines legal fraud as follows: 'Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.'" *Montgomery Rubber & Gasket Co., Inc. v. Belmont Mach. Co., Inc.*, 308 F. Supp. 2d 1293, 1297 (M.D. Ala. 2004) (quoting ALA. CODE § 6-5-101(1975)).

representation. *Id.*

Under Alabama law, "[f]raud is never presumed, and a person who

asserts fraud has the burden of proof." *Wilson v. S. Med. Ass'n*, 547 So. 2d

510, 514 (Ala. 1989).  In addition, a court is to "carefully scrutinize the

plaintiff's case . . . 'because it is the policy of courts not only to discourage

fraud but also to discourage negligence and inattention to one's own

interests.'" *Cornelius v. Austin*, 542 So. 2d 1220, 1222 (Ala.1989)(quoting

*Torres v. State Farm Fire & Cas. Co.*, 438 So. 2d 757, 758-59 (Ala.1983)).

Defendant alleges in its brief that Knight's Complaint does not support

any specific misrepresentations that the defendant in this action actually

committed.[14]  (Doc. 25.)   Knight responds to Defendant's argument by

---

[14]In addition, Defendant argues that any alleged misrepresentation made *after* Plaintiff
executed the Agreement could not have induced action because the Plaintiff was already
contractually bound by the Agreement. (Doc. 25.)  "A representation in an arm's length
transaction that causes a person to do nothing more than he was legally obligated to do
without such a representation being made, is not material and therefore cannot
constitute actionable fraud." *Reeves v. Porter*, 521 So. 2d 963, 967 (Ala. 1988).  "It is
said to be immaterial that one is induced by false representations to do what he is bound
to do.  A person who has been induced to do that which the law would have otherwise
required him to do cannot claim to have been defrauded." *Id.* at 967-68 (quoting 37 Am.
Jur. 2d *Fraud and Deceit* § 295, at 392-93 (1968).
       In response, Plaintiff claims that by the time Insulspan made these further
misrepresentations, Gulf South had long-since breached the Agreement indicating that
Plaintiff was no longer bound by the Agreement.  (Doc. 30.)  The Agreement requires
delivery within six-weeks of the Order Date. (Chambers Dep. Ex. 3.)  However, Plaintiff
argues that delivery did not take place within six weeks, indicating that the contract had

pointing directly to the alleged misrepresentations.  Plaintiff claims that

Insulspan represented that Plaintiff could not purchase panels directly from

Insulspan but would have to purchase such products from a dealer, such as

_____

been breached.    Therefore, Plaintiff argues that when Defendant allegedly
misrepresented that it would obtain payment from Gulf South and that Chambers was
qualified as a carpenter, Knight was not contractually bound by the contract and that
Plaintiff relied on these misrepresentations when he went ahead and made payment to
Gulf South to obtain the panels and when he continued to use Chambers as opposed to
just cancelling the contract.

Even assuming that the contract had been breached, the only representations
upon which Plaintiff could reasonably rely are those representations made before
Plaintiff entered into the Agreement with Gulf South.  Under contract law, if one party
materially breaches its duties, the non-breaching party "may repudiate the agreement
and not perform prospectively" or "may elect to continue the contract and retain its
economic benefits."  *Edwards v. Allied Home Mortgage Capital Corp.*, 962 So. 2d 194,
207 (Ala. 2007)(citing RESTATEMENT (SECOND) OF CONTRACTS ch. 10, intro. n. (1981)).  When
the parties have entered into a contract, "the injured party is not excused from
performing his remaining duties if he continues the agreement with knowledge of the
default by the breaching party."  *Id.*   "A plaintiff cannot simultaneously claim the
benefits of a contract and repudiate its burdens and conditions."  *Southern Energy
Homes, Inc. v. Gregor*, 777 So. 2d 79, 82 (Ala. 2000) (quoting *Southern Energy Homes,
Inc. v. Ard*, 772 So. 2d 1131, 1134 (Ala. 2000)).

Here, Plaintiff continued the Agreement by making payment for the panels and
accepting delivery of the panels, even after the alleged breach due to the late delivery.
Since Plaintiff continued to operate under the Agreement, he is not excused from
performing under the contract.  Plaintiff's argument that the contract was breached did
not excuse his performance since he accepted the benefits of the contract, the delivery
of the product, with knowledge of Gulf South's alleged breach.  Therefore, Plaintiff was
still bound by the contract, and could thereby not have been induced to perform by any
further representations of Insulspan.  *See Reeves*, 521 So. 2d at 969 (citations
omitted)(where defendant was legally bound to complete the purchase of the property
under the terms of the contract, she was in no way prejudiced by the falsity of the
representations, and therefore could not establish reasonable reliance).  Thus, Plaintiff
could not have reasonably relied on any alleged misrepresentations made by Insulspan
*after* Plaintiff executed the Agreement with Gulf South.

Chambers/Gulf South.[15]  (Doc. 30 at 15.)  In addition, Insulspan represented

that Chambers and Gulf South were qualified to sell Insulspan products and

could provide the technical assistance in the assembly process and that

Chambers was well qualified as a carpenter and builder.[16]  *Id.* at 15-16.

Plaintiff alleges that Insulspan promised to make sure Chambers paid the

money for panels so that there would be no further delay.[17]  *Id.* at 16.

_____

[15]While Knight testified that someone at Insulspan told him that he could not purchase directly from Insulspan, Insulspan's president, Baker, testified that this was not the company's official policy; however, he admitted that someone could have told Plaintiff this since it was the company's policy to strongly encourage customers to go through Insulspan dealer-representatives.  (Doc. 30; Baker Dep. at 23, 29.)

[16]Defendant argues that "there is no evidence that Insulspan knew that Chambers, or any other employee of Gulf South, was not competent to distribute its products."  (Doc. 25; Baker Aff.)  However, Alabama Code § 6-5-101 defines fraudulent misrepresentation as "[m]isrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, *or if made by mistake and innocently and acted on by the opposite party*, constitute legal fraud."  ALA. CODE § 6-5-101(1975)(emphasis added).  "An innocent misrepresentation is as much a legal fraud as an intended misrepresentation and the good faith of a party in making what proves to be a material misrepresentation is immaterial as to the question whether there was an actionable fraud if the other party acted on the misrepresentation to his detriment."  *Davis*, 965 So. 2d at 1091 (quoting *Smith v. Reynolds Metals Co.*, 497 So. 2d 93, 95 (Ala. 1986)).  Since a misrepresentation made innocently and by mistake can constitute legal fraud, it is irrelevant to Plaintiff's fraudulent misrepresentation claim that Defendant allegedly did not know of Chambers's lack of qualifications.  Regardless of whether Defendant knew of Chambers's lack of qualifications, the alleged misrepresentations may still constitute the basis for a fraud claim.

[17]Defendant asserts that is "is factually inaccurate to state that Insulspan promised to get Chambers to pay money to Insulspan for panels."  (Doc. 30.)  In Knight's testimony, he testified that he talked to Kevin Kehoe, the head of the customer service department at Insulspan, and told him that he wanted to send the money directly to Insulspan so that

Even if the Court assumes that the alleged misrepresentations were made, the Court must still consider whether Knight has presented evidence establishing the element of reasonable reliance.  "An essential element of any fraud claim is that the plaintiff must have reasonably relied on the alleged misrepresentation." *Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So. 2d 1143, 1160 (Ala. 2003).  The reliance element of a fraud claim "requires that the misrepresentation actually induced the injured party to change its course of action." *Exxon Mobil Corp. v. Ala. Dep't of Conservation & Natural Res.*, 2007 WL 3224585, * 19 (Ala. 2007).  In order

---

he could make sure that they were paid for.  (Knight Dep. at 161.)  Knight further testified that "[a]nd [Kehoe] says well, -- [Knight] said [Kehoe] told me that he would straighten it out with Cal and make sure that that was what was going to happen, that [Knight's] panels would be paid for, and [Kehoe's] answer to [Knight] was: I guess I dropped the ball there." *Id.*  When asked about this statement at his deposition, Kehoe testified that he didn't recall stating this, but "[he] may have."  (Kehoe Dep. at 23.)  Based on this testimony, there is a question of fact as to whether Kehoe represented that he would make sure Chambers paid the money.

To the extent that this statement is a promise to perform a future act, it should be analyzed under a promissory fraud theory.  *See supra* Section IV(A)(2).  In the event that a claim based on this representation is characterized as a promissory fraud claim, the claim is due to be dismissed since Plaintiff has presented no evidence of Defendant's intent to deceive.

 Further, there is no evidence that this representation was actually made or that it was false.  Plaintiff did pay Gulf South and Gulf South did pay Insulspan thus resulting in the delivery of the product.  Therefore, this alleged representation cannot serve as the basis for Plaintiff's fraudulent misrepresentation claim.

to satisfy the reliance element of his fraud claim, Knight must establish that he relied on Insulspan's alleged misrepresentations and that the reliance was reasonable in light of the facts surrounding the transaction in question. *See Brushwitz v. Ezell*, 757 So, 2d 423, 430 (Ala. 2000)(citing *Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 421 (Ala. 1997)(stating that the issue of reasonable reliance is "based on all of the circumstances surrounding a transaction, including the mental capacity, educational background, relative sophistication, and bargaining power of the parties")).[18]

Defendant argues that Plaintiff's fraudulent misrepresentation claim must fail because there is no reasonable reliance.  (Doc. 25.)   First, Defendant contends that there is no reasonable reliance due to the terms of the Agreement between Gulf South and Knight, which provides that Plaintiff "has not relied upon any oral or written statement, undertakings, or representations."  (Doc. 25; Chambers Aff. Ex. 3.)  Insulspan is not a

---

[18]With the return to the "reasonable reliance" standard, the Alabama Supreme Court stated that this standard also provides a mechanism "whereby the trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms."  *Foremost Ins. Co.*, 693 So. 2d at 421.

party to the contract nor does it not assert in its brief that Gulf South and Knight intended to bestow a direct benefit on Insulspan when the Agreement was executed, indicating that Insulspan is not a third-party beneficiary to the contract. *See Mills v. Welk*, 470 So. 2d 1226, 1228 (Ala. 1985)(stating that it is well settled in Alabama that one who seeks to recover as a third-party beneficiary of a contract "must establish that the contract was intended for his direct" benefit). Insulspan is apparently attempting to utilize the Agreement to defend against the reliance element of Plaintiff's fraud claim while, at the same time, attempting to avoid liability by arguing that it is completely separate from Gulf South and Chambers. "It is well settled that a party may not seek to take advantage of the benefits of a contract while seeking to avoid the burdens of that contract." *Hill v. Nat'l Auction Group, Inc.*, 873 So. 2d 244 (Ala. Civ. App. 2003)(citing *Credit Sales, Inc. v. Crimm*, 815 So. 2d 540 (Ala. 2001)).

Next, Defendant argues that Plaintiff has not presented any evidence of reasonable reliance. (Doc. 33.)  Plaintiff asserts his reliance on Defendant's representations was reasonable because "he was not in as good a position as Insulspan" to know Insulspan's policies or to know Chamber's

qualifications and background.  (Doc. 30.)  In determining whether this reliance was reasonable, the court will look at all of the circumstances surrounding the transaction including the mental capacity, educational background, relative sophistication, and bargaining power of the parties. *Foremost Ins. Co.,* 693 So. 2d at 421.  "If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover." *Massey Auto., Inc. v. Norris,* 895 So. 2d 215, 220 (Ala. 2004)(quoting *Torres*, 438 So. 2d at 759).

Here, Plaintiff is an experienced businessman, who owns and operates a business called Knight Motor Company  (Knight Dep. at 12),  while Insulspan is a corporation which deals regularly in transactions involving these panels.  In taking into account the relative sophistication of the parties, it appears that Knight, an experienced businessman, is intelligent and was fully capable of handling his own affairs.

In regard to Plaintiff's reliance on Insulspan's representation that he would have to go through a dealer, Plaintiff's reliance was reasonable since Knight did not have independent knowledge of Insulspan's sales policies that

would lead him to believe otherwise and because Insulspan was in a better position to know its own sales policies.  *See Gilmore v. M & Realty Co., L.L.C.*, 895 So. 2d 200, 209 (Ala. 2004)(citations omitted)("A purchaser's 'reliance is reasonable in the absence of independent knowledge sufficient to arouse the purchaser's suspicion, and he is not obligated to make an independent investigation as to the truth of the . . . representations absent such knowledge.'").  However, Plaintiff contends that this representation, when coupled with assurances that Insulspan's representatives were qualified, supports its fraud claim.  (Doc. 30.)  Therefore, it is necessary to consider whether Plaintiff was reasonable in relying not only on this statement but also on the assurances that Chambers/Gulf South was qualified.

Applying the standard of reasonable reliance to the conversations that took place between Insulspan and Knight, and considering "all of the circumstances surrounding it," this court cannot conclude that Knight could have reasonably relied on Insulspan's statement that Knight could not purchase directly from them but would have to go through a dealer to mean that Chambers and Gulf South were "competent to both provide the

necessary materials and to supervise, advise, and oversee the construction of the House." (Compl. at ¶ 10.)  Plaintiff himself contacted Chambers and negotiated the purchase of the panels; Insulspan was not involved, except to have encouraged Plaintiff to contact an Insulspan dealer.  Therefore, Plaintiff could not have reasonably relied on Defendant's representations to indicate that Chambers was qualified and competent to perform.  *See Bowman v. McElrath Poultry Co., Inc.*, 468 So.2d 879, 880-81 (Ala. 1985)(where McElrath encouraged plaintiff to purchase an automatic egg-gathering system, but the plaintiff negotiated the contract himself, the court held that the plaintiff could not have relied on representations by McElrath that the system would function properly); *see also Hinson v. Center Court Prods.,* 514 So. 2d 1374, 1375-76 (Ala. 1987)(where the court held that the "middleman," who solicited plaintiff to participate in a show, could not be held responsible for misrepresentations since the mall association had the final approval of the contracts).

In addition, since Plaintiff was entering into the contract with Gulf South, he was in a position to discover the qualifications of Chambers and Gulf South as to ensure that he was dealing with a competent dealer.

Insulspan did not control Gulf South's or Chambers's daily operations. Therefore, Plaintiff, in bargaining for the contract, was in as good of a position as Insulspan to determine the qualifications of Gulf South and Chambers.  Plaintiff was an experienced businessman, and was capable of investigating Chambers and Gulf South so as to protect his own interests. Further, Plaintiff has provided no evidence, other than asserting that Insulspan was in a better position to know of the qualifications, to support his assertion that he reasonably relied on these representations.  Therefore, Plaintiff has not established the crucial element of reliance, and his fraud claim cannot survive.

Based on the foregoing, summary judgment is due to be granted as to Plaintiff's fraud claim.

B.     Suppression.[19]

Count II of Plaintiff's Complaint alleges that Insulspan fraudulently suppressed information relating to the qualifications and ability of Chambers and/or Gulf South to perform under a contract for the sale of Insulspan

_____

[19]To the extent Defendant argues that Plaintiff failed to plead the fraudulent suppression claim with particularity, see the discussion above regarding the requirement to plead fraud with particularity.  *See supra* Section IV(A)(1).

panels.  Plaintiff maintains that Insulspan "knew that [Chambers and/or Gulf South] were not qualified, ready, willing and/or able to perform the . . . contracts and did not disclose this to Plaintiff."  (Doc. 1 at ¶ 18.)

In order to establish a claim for fraudulent suppression,[20] a plaintiff must establish: (1) that the defendant had a duty to disclose; (2) that the defendant suppressed an existing, material fact; (3) that the defendant had actual knowledge of the fact and its materiality; (4) that the defendant's suppression of the fact induced the plaintiff to act or refrain from acting; and (5) that the plaintiff suffered actual damage as a proximate result thereof.  *See, e.g., Johnson v. Sorenson*, 914 So. 2d 830, 837 (Ala. 2005); *Hardy v. Blue Cross & Blue Shield of Ala.*, 585 So. 2d 29, 32 (Ala. 1991). Silence alone does not constitute fraud unless there exists a duty to communicate that a material fact exists.  *See Foremost Ins. Co.*, 693 So. 2d at 423. Under Alabama law, a plaintiff faced with a motion for summary judgment on a fraudulent suppression claim must offer substantial evidence

---

[20]Alabama Code § 6-5-102 provides: "[s]uppression of a material fact which the party is under an obligation to communicate constitutes fraud.  The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."  ALA. CODE § 6-5-102(1975).

as to each of those elements.  *See Mason v. Chrysler Corp.*, 653 So. 2d 951,

954 (Ala. 1995).

Defendant attacks Plaintiff's claim by asserting that Insulspan did not

owe Plaintiff a duty to disclose.  (Doc. 25.)  In addition, there is no evidence

that Insulspan knew that Chambers or Gulf South "were not qualified, ready,

willing and/or able to perform" or of Chamber's financial instability.  *Id.*

Further, Defendant asserts that there is no evidence that Plaintiff was

induced to act or refrained from acting to his detriment due to Insulspan's

alleged suppression.  *Id.*

    1.    Duty to Disclose.

In a suppression claim, a duty to disclose material facts "may arise

from the confidential relations[21] of the parties or from the particular

---

[21]A confidential relationship is defined as:

    [A relationship in which] one person occupies toward another such a
position of adviser or counselor as reasonably to inspire confidence that he
will act in good faith for the other's interests, or when one person has
gained the confidence of another and purports to act or advise with the
other's interest in mind; where trust and confidence are reposed by one
person in another who, as a result, gains an influence or superiority over
the other; and it appears when the circumstances make it certain the
parties do not deal on equal terms, but, on the one side, there is an
overmastering influence, or, on the other, weakness, dependence, or trust,
justifiably reposed; in both an unfair advantage is possible. It arises in
cases in which confidence is reposed and accepted, or influence acquired,

circumstances of the case." ALA. CODE § 6-5-102; *see also Bank of Red Bay v. King,* 482 So. 2d 274, 285 (Ala. 1985).  Whether a duty to disclose exists in a particular case is a question of law to be determined by the trial judge, and such a determination "necessarily requires analyzing the factual background of the case." *State Farm Fire & Cas. Co. v. Owen,* 729 So. 2d 834, 839 (Ala. 1998).  In determining whether a duty to disclose exists, a court considers various factors including the relation of the parties, the value of the particular fact, the relative knowledge of the parties, the plaintiff's opportunity to ascertain the fact, the customs of the trade, and other circumstances.  *Id.* at 842-43; *Bank of Red Bay*, 482 So. 2d at 285; *Glass v. Southern Wrecker Sales*, 990 F. Supp. 1344, 1349 (M.D. Ala. 1998)(citing *Lowder Realty, Inc. v. Odom*, 495 So. 2d 23, *rev'd on other grounds,* (Ala. 1986)). However, "when parties to a transaction deal at arm's length with no confidential relations, no duty to disclose arises, unless information is requested." *Glass*, 990 F. Supp. at 1349 (citing *Trio Broadcasters, Inc. v. Ward*, 495 So. 2d 621 (Ala. 1986)); *see also Bank of Red*

───────────────

and in all the variety of relations in which dominion may be exercised by one person over another.
*Holdbrooks v. Cent. Bank of Ala.*, 435 So. 2d 1250, 1252 (Ala. 1983).

*Bay*, 482 So. 2d at 285 (when both parties are intelligent and fully capable of taking care of themselves and dealing at arm's length, with no confidential relations, there is no duty to disclose a material fact that is not requested).

Here, the facts and circumstances of this case establish that there is no confidential relationship between Knight and Insulspan, nor are there any particular circumstances which give rise to a duty to speak.[22]   Knight's contacts with Insulspan consisted of his obtaining preliminary information regarding Insulspan's products and how to acquire these products before he purchased the panels from Gulf South and requesting follow-up information regarding the status of his order.   There was no contractual relationship between Insulspan and Knight; the contract for the sale of the panels was between Knight and Gulf South.   Rather, when Plaintiff called Insulspan to obtain information regarding its products, the parties dealt with each other

---

[22]This Court recognizes the fact that Insulspan had superior knowledge of its sales policies.  While this factor may be important, it is not dispositive.  "Superior knowledge of a fact, without more, does not impose upon a party a legal duty to disclose such information." *Owen*, 729 So. 2d at 843.  Rather, Insulspan's superior knowledge as to its procedures and practices should be balanced with other considerations, which are discussed in this section.

at arms-length.[23] According to the Alabama Supreme Court, no duty to disclose exists between parties in an arms-length dealing, unless such information is requested. *See, e.g., Trio Broadcasters, Inc. v. Ward*, 495 So. 2d at 623; *Shutter Shop, Inc. v. Amersham Corp.*, 114 F. Supp. 2d 1218, 1225 (M.D. Ala. 2000). In addition, no duty to disclose exists when "the parties to a transaction are knowledgeable and capable of handling their affairs." *Trio Broadcasters, Inc.*, 495 So. 2d at 623.   Thus, there is no evidence establishing  that Insulspan owed a duty to disclose to Plaintiff.

Moreover, Plaintiff has presented no evidence that Insulspan had a duty to inform him completely of the company's policies and of Chambers's qualifications, rather Plaintiff merely asserts that "[a] careful consideration of the [factors used in analyzing whether a duty exists] should yield a conclusion that Insulspan owed a duty to disclose." (Doc. 30.) Therefore, Plaintiff has failed to offer substantial evidence as to this element of his

---

[23]Knight has been in the used car sales business for about twenty years, and owns a business called Knight Motor Company.  (Knight Dep. at 12.)  Therefore, since Knight is an experienced businessman, it appears that Knight had the ability to deal with Insulspan at arm's length.  *See Miller v. Pawn World, Inc.*, 705 So. 2d 467 (Ala. Civ. App. 1997)(where Miller was a high school graduate, a district manager for an insurance company, and had some experience in pawning items, the court found that he was capable of dealing at arm's length with Pawn World, Inc.).

claim for fraudulent suppression as required by Alabama law.  *See Mason*, 653 So. 2d at 954 (where the Masons presented no evidence suggesting that Chrysler or Royal Motor Company owed them a duty to disclose information and the evidence that was before the court did not indicate a duty to disclose, the court held that summary judgment was appropriate).

Plaintiff alleges that since Insulspan directed Plaintiff to purchase its products through Chambers, Insulspan assumed a duty to inform Knight of the facts that rendered Chambers unfit for the task.  A party who elects to speak "assumes a duty not to suppress or conceal those facts that materially qualify the facts already stated.  That party does not assume a duty to divulge all information that *may be* or *may become* relevant to the other party.  The duty imposed on the speaking party is to disclose those facts that are material to the ones already stated so as to make them truthful." *Freightliner, L.L.C. v. Whatley Contract Carriers, L.L.C.*, 932 So. 2d 883, 895 (Ala. 2006).  Insulspan did not assume a duty to disclose all facts regarding Gulf South or Chambers by virtue of suggesting that Knight purchase Insulspan products through a dealer.

Thus, Insulspan had no duty to disclose the information allegedly

suppressed.

        2.     Knowledge of Chambers' Lack of Qualifications.

Even if this Court were to assume that a duty to disclose existed, Plaintiff's claim for fraudulent suppression must fail since Plaintiff has not presented evidence that the defendant had actual knowledge of what Plaintiff contends Defendant should have disclosed and its materiality.  *See Johnson*, 914 So. 2d at 837; *Hardy*, 585 So. 2d at 32.  "An action for suppression will lie only if the defendant actually knows the fact alleged to be suppressed."  *Glass*, 990 F. Supp. at 1350 (M.D. Ala. 1998)(citing *McGarry v. Flournoy*, 624 So. 2d 1359 (Ala. 1993); *see also Cornelius v. Austin*, 542 So. 2d 1220, 1224 (Ala. 1989)(quoting *Harrell v. Dodson*, 398 So. 2d 272, 276 (Ala. 1981)("As a matter of law, one can only be liable for concealing facts of which one has knowledge.").  Here, Plaintiff asserts that Defendant knew of its sales policies[24] and should have known of Chambers's financial instability.  (Doc. 30.)  However, Knight has failed to present any evidence

---

[24]The fact that Defendant knew of its sales policies is immaterial to the suppression claim since Plaintiff alleges that Defendant suppressed the fact that Gulf South and Chambers "were not qualified, ready, willing and/or able to perform the . . . contracts and did not disclose this to Plaintiff."  (Doc. 1 at ¶ 18.)

establishing that Insulspan *knew* that Gulf South or Chambers was not qualified, ready, willing and/or able to perform.  Regardless of whether Gulf South or Chambers was actually qualified, there is no evidence before this Court that Insulspan was aware of Gulf South's or Chambers's lack of qualification or ability.   Therefore, Plaintiff has failed to establish Defendant's knowledge of the suppressed fact, indicating that his fraudulent suppression claim must fail.

Based on the foregoing, summary judgment is due to be granted in favor of Insulspan as to Plaintiff's claim of fraudulent suppression.

C.     Vicarious Liability.[25]

"Proof of an agency relationship . . . , rather than an independent-contractor relationship, is critical to [Plaintiff's] action, because it is a 'well-settled rule that a principal is not ordinarily liable for the torts of an independent contractor.'" *Lincoln Log Home Enters., Inc. v. Autrey,* 836 So. 2d 804, 806 (Ala. 2002)(citations omitted).  When liability is based on an

---

[25] To the extent that Plaintiff asserts claims of fraudulent misrepresentation, suppression, and negligence premised on the alleged statements, suppressions, or actions of Gulf South or Chambers, the analysis in this Section applies as to determine whether Insulspan could be held vicariously liable.

agency relationship, agency may not be presumed.  *Wood v. Shell Oil Co.*, 495 So. 2d 1034, 1035-36 (Ala. 1986).   Rather, the party asserting that an agency relationship exists must present "substantial evidence of an agency relationship."  *Battles v. Ford Motor Credit Co.*, 597 So. 2d 688, 689 (Ala. 1992).[26]

The "test for determining whether an agency existed by 'estoppel' or by 'apparent authority' is based upon the potential principal's holding the potential agent out to third parties as having the authority to act."  *Malmberg v. Am. Honda Motor Co., Inc.*, 644 So. 2d 888, 890 (Ala. 1994).[27] When a person "has reasonably and in good faith been led to believe, from the appearance of authority which a principal permitted his agent to exercise, that a certain agency exists, and in good faith acts on such belief to his prejudice, the principal is estopped from denying such agency."  *Id.* (citation omitted).   Apparent agency "is based upon the actions of the

---

[26]Plaintiff concedes that he cannot prove an actual agency relationship between Chambers/Gulf South and Insulspan (Doc. 30 at 22); therefore, this Court will only consider whether Insulspan can be held vicariously liable under an apparent agency theory.

[27]Alabama case law does not distinguish between apparent authority and agency by estoppel. *Malmberg*, 644 So. 2d at 890.

principal, not those of the agent; it is based upon the principal's holding the agent out to a third party as having the authority upon which he acts, not upon what one thinks an agent's authority might be or what the agent holds out his authority to be." *Id*.

In considering whether an agency relationship exists, courts examine all of the evidence tending to show an agency relationship in order to determine whether the evidence is sufficient to raise a question of fact as to the existence of an apparent agency. *See Malmberg,* 644 So. 2d at 891 (where the court held that in viewing the evidence, not solely the evidence of the use of logos, but also the evidence presented by plaintiff that Honda provides a warranty and mechanics for assuring that the warranty is provided to a Honda purchaser through a Honda dealer, that Honda instructs and trains its dealers, and that purchaser relied on representations regarding the warranties as being those of Honda, that there was sufficient evidence of a genuine issue as to whether an agency existed with regard to the representations of warranty).[28]

---

[28]In *Malmberg*, the plaintiff sought to impose liability on American Honda as a result of Tri-States' alleged misrepresentations regarding the warranty.  The court found that since plaintiff presented substantial evidence tending to show that Tri-States was

Here, Plaintiff saw a television show which indicated that Insulspan panels were easy to install and would save him money, so he called Insulspan attempting to purchase the panels from them.  (Knight Dep. at 33, 73-74.)  However, when Plaintiff spoke with someone at Insulspan, he was instructed that he could not buy directly from them but would have to go through a dealer or an Insulspan representative.  *Id.*  Insulspan told Plaintiff that the Alabama representative would take his order and would show him how to build his house.  (Knight Dep. at 70.)   While Plaintiff argues that the use of the term "representative" creates the appearance of an agency relationship, the use of this term is not sufficient evidence to conclude that an agency relationship exists.  Rather, Insulspan's use of this term is wholly consistent with manufacturer-independent distributor relationship.  Gulf South, an independent distributor, would be taking the order and working with Plaintiff while Insulspan would be solely responsible for manufacturing the product.   In addition, Insulspan's website listed Gulf South as an Insulspan "Sales and Service Center," not an authorized agent.  (Baker Dep.

---

American Honda's agent for warranty purposes, there was a genuine issue of material fact as to the claim.  *See* 644 So. 2d at 890-91.

Ex. 4.)  The promotional letter sent to Plaintiff by Insulspan stated that Plaintiff should contact an "Insulspan affiliate" or representative in order to purchase the products.  (Baker Dep. Ex. 3.)  This evidence establishes a manufacturer-independent distributor relationship between Gulf South and Insulspan, not an agency relationship. Plaintiff's mere subjective belief that Chambers/Gulf South was an agent of Insulspan, is not sufficient to show that a reasonable person would have concluded that an agency relationship existed.  *See Brown v. St. Vincent's Hosp.*, 899 So. 2d 227, 241 (Ala. 2004)(where the plaintiff called a hospital asking about an obstetrician and the hospital gave her the name of an obstetrician, the court held that plaintiff's belief that this created an agency relationship was not sufficient to find an agency relationship).

In addition, the written contract between Gulf South and Knight was sufficient to put a reasonable person on notice that Gulf South was not an agent of Insulspan.  Knight contacted Chambers and entered into a contract for the purchase of panels, which stated that the contract was between "Gulf South Panels, LLC" and Knight.  (Chambers Aff. Ex. 3.)  The Agreement between Gulf South and Knight provided for the sale of the

panels, which were to be manufactured by Insulspan.  *Id.*  While Plaintiff

contends that the fact that the Agreement was sent by fax on paper with

the label "Gulf South Insulspan" supports a conclusion that Gulf South was

Insulspan's agent  (Doc. 30.), apparent agency is created by the acts of the

*principal*, not those of the agent; therefore, the fact that Gulf South sent

a fax under the label of "Gulf South Insulspan" does not affect the decision

as to whether an agency relationship existed.  *See Malmberg*, 644 So. 2d at

890.  Rather, the Agreement between Knight and Gulf South was sufficient

to put a reasonable person on notice that Gulf South was not an agent of

Insulspan since the Agreement listed Gulf South as the seller; it provided

that the products were to be manufactured by Insulspan, indicating that

Gulf South was merely a dealer of Insulspan's products; and it stated that

the panels were to be delivered by Gulf South, and Gulf South was to

provide a trained Insulspan installer to aid Plaintiff in installing the panels.

*See Goforth v. Hallmark Pools*, 393 So. 2d 989, 990 (Ala. 1981)(where the

contract provided for "a Hallmark pool" to be provided to plaintiff by Gibbs,

a dealer of such pools; the newspaper add listed Gibbs as a dealer; and the

pool kit was delivered and to be installed by Gibbs, the court held that no

agency relationship existed between Gibbs and Hallmark).   In addition, Knight paid for the panels by sending a check to Gulf South, not Insulspan. (Doc. 24.)

While Insulspan did send promotional materials to Plaintiff and allow Gulf South to use its name, logo, and materials, this evidence is not sufficient to support a conclusion that an agency relationship existed. Insulspan sent a promotional letter to Knight after their telephone conversation, which discussed the benefits of the product and directed people to contact an Insulspan affiliate or representative to obtain the products.  However, this material is not sufficient to show that Gulf South was an agent of Insulspan.  *See Chase v. Kawasaki Motors Corp., U.S.A.*, 140 F. Supp. 2d 1280, 1292 (M.D. Ala. 2001)(where various materials were provided to plaintiff by Dyer on behalf of Kawasaki, the court held that this was not sufficient to establish an agency relationship between Dyer and Kawasaki).  In addition, although Gulf South may have used Insulspan's logo, materials, and name in connection with its Independent Distributor Agreement with Insulspan, evidence of logos, literature, products, brochures, and plagues is "not sufficient, *in itself*, to create an inference

of agency, because it is common knowledge among the general public that such a logo is often displayed by independent dealers and that the only representation made by such display is that the [company's products are] sold" by the dealer.  *Wood*, 495 So. 2d at 1039.

Based on the evidence before the Court, it does not appear that a reasonable person would have cause to believe that Gulf South was Insulspan's agent; instead, the evidence shows that Gulf South was an independent distributor of Insulspan. *Brown*, 899 So. 2d at 242 (It must appear that a person "had reasonable cause to believe that the authority existed; mere belief without cause, or belief in the face of facts that should have put him on his guard is not enough."); *see also Northington v. Dairyland Ins. Co.*, 445 So. 2d 283, 286 (Ala. 1984)(The "principal must have engaged in some conduct which led a third party to believe that the agent had authority to act for the principal.").   Insulspan cannot be held vicariously liable for the acts of Gulf South.

D.    Negligence, Wantonness, and Wilfulness.

Plaintiff alleges claims of negligence against Insulspan, asserting that Insulspan negligently authorized Gulf South and/or Chambers to serve as an

authorized dealer, negligently failed to ensure that Gulf South and Chambers were qualified, and negligently failed to train and supervise Chambers/Gulf South. (Doc. 1). Defendants contend that Plaintiff's claim must fail because there was no master-servant relationship between Insulspan and Gulf South or Chambers,[29] and because there was no evidence that Insulspan had knowledge of Chambers's or Insulspan's incompetence. (Doc. 25 at 29.)

The Alabama Supreme Court has discussed the elements of negligent selection, hiring, retention, or supervision, stating:

> In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. It is incumbent on the party charging negligence to show it by proper evidence. This may be done by showing specific acts of incompetency and

---

[29]"Proof of a master and servant relationship is tested by the degree of control the alleged master retains over the alleged servant." *Ware v. Timmons*, 954 So. 2d 545, 549 (Ala. 2006). Plaintiff conceded that he cannot meet the right of control test (Doc. 30 at 22); therefore, there is no master-servant relationship. Thus, this Court will consider whether Insulspan is directly liable to Plaintiff for the negligent hiring, training, supervision, or retention of an independent contractor, Chambers/Gulf South.

bringing them home to the knowledge of the master, or by showing them to be of such nature, character, and frequency that the master, in the exercise of due care, must have had them brought to his notice. While such specific acts of alleged incompetency cannot be shown to prove that the servant was negligent in doing or omitting to do the act complained of, it is proper, when repeated acts of carelessness and incompetency of a certain character are shown on the part of the servant to leave it to the jury whether they would have come to his knowledge, had he exercised ordinary care.

*Lane v. Cent. Bank of Ala., N.A.,* 425 So. 2d 1098, 1100 (Ala. 1983)(quoting

*Thompson v. Havard*, 235 So. 2d 853, 858 (Ala. 1970)).

Here, Plaintiff contends that Insulspan is directly liable to him because Insulspan should authorize competent and qualified dealers to provide its products and oversee and supervise the assembly of the houses being built with Insulspan products.[30]  In support of his claim, Plaintiff points to Alabama court records which indicate that prior to executing the Independent Distributor Agreement, Chambers and his construction company had been sued numerous times for failure to pay bills.  (Baker Dep. at 105;

---

[30]Alabama law is unclear as to whether it recognizes a tort for negligent hiring, training, or supervision under which an employer can be held directly liable for the incompetency or negligence of an independent contractor.  However, based on *McGinnis v. Jim Walter Homes, Inc.*, this Court will assume that Alabama law recognizes such a tort. 800 So. 2d 140 (Ala. 2001).

Docs. 30 & 31.)  Baker admitted that if he had known about the lawsuits and other evidence of Chambers's financial instability, this information would have alarmed him.  (Baker Dep. at 104-110.)   However, Baker never stated that this information alone would disqualify Chambers/Gulf South as an authorized dealer; rather, he stated that Insulspan would have investigated the details and evaluated whether to permit Gulf South to serve as a dealer. *Id.*  In addition, Vollmar, the comptroller of Insulspan, testified that, as a general rule, Insulspan usually did not pull a credit report on potential dealers.  (Vollmar Dep. at 7-9.)  Insulspan typically requires payment from its dealers prior to the delivery of the product; therefore, the credit history of a dealer is generally not investigated by the company, nor is this information necessary to determine whether a company can serve as an authorized dealer.  *Id.*  While an investigation of Chambers's credit history may have revealed that Chambers and his construction company were financially unstable, Plaintiff has not presented evidence that this alleged financial instability indicates that Chambers or Gulf South was not competent or qualified to provide Insulspan products.  This evidence of Chambers's financial instability alone is not sufficient to support Plaintiff's

claim for negligent hiring, training, and supervision.

In addition, Plaintiff argues that it is "clear from the record that Chambers was deficient in his skills as a designer and installer," pointing to evidence that Chambers spent more than the contracted for two day period at the location helping with the installation; that Chambers asked more questions of Plaintiff's carpenters than he gave advice as to how to properly install the panels; and that Knight called Insulspan's technical department to learn the proper way to perform.  (Doc. 30 at 28.)  However, this does not indicate that Chambers had a history of negligently constructing houses, but rather only suggests that Chambers's alleged incompetence in performing on this contract was sufficient to suggest that Insulspan could have learned through this performance of Chambers's lack of qualifications. This evidence alone is insufficient to support a claim for negligent hiring, training, or supervision.  *See Hester v. Brown,* 512 F. Supp. 2d 1228, 1238-39 (M.D. Ala. 2007)(where the plaintiffs contended that Brown's alleged incompetence during the events giving rise to the present action put Emergystat on notice of Brown's alleged incompetence and that Emergystat would have discovered Brown's alleged incompetence if the company had

exercised due care, the court held that the plaintiffs' evidence did not "suffice as affirmative proof of the requisite actual or constructive awareness for the present negligent hiring or supervision claim"); *see also McGinnis*, 800 So. 2d at 149.

Plaintiff has presented no evidence to establish that, prior to Plaintiff entering into the contract with Gulf South, Insulspan either knew, or should have discovered in due diligence, that Chambers or Gulf South was not qualified or able to perform under contracts for the sale of Insulspan panels. *See McGinnis.*, 800 So. 2d at 148 (where the plaintiffs pointed to the findings of their experts which indicated that the contractor was not competent to install the electrical system, but failed to present evidence that the contractor had a history of negligent installation or that Jim Walters knew or should have known of this negligence, the court held that summary judgment was appropriate in favor of Jim Walter). Additionally, Plaintiff has presented no evidence suggesting that if Insulspan had "exercised due diligence [it] would have learned something that would charge it" with knowledge of Chambers's or Gulf South's incompetency. *See Collins v. Wilkerson*, 679 So. 2d 1100, 1103 (Ala. Civ. App. 1996*)*.   A critical

element of a negligent hiring or supervision claim "is proof that the defendants actually knew, or should have discovered in the exercise of due diligence." *Sanders v. Shoe Show, Inc.*, 778 So. 2d 820, 824 (Ala. Civ. App. 2000)(where the record contained no evidence to support an inference that the defendants knew or should have known that Snyder would act improperly based on a suspicion of shoplifting or that Snyder had a history of improper conduct similar to the conduct alleged, the court held that summary judgment for the defendant on plaintiff's negligent supervision or hiring claim was proper); *see also Collins*, 679 So. 2d at1103 (where Collins failed to submit substantial evidence that Wilkerson actually knew of any incompetency on the part of Nowell, or to suggest that if he had exercised due diligence he would have learned of incompetence, the court held that summary judgment was proper on the negligent supervision claim). Therefore, since Plaintiff has presented no evidence that Insulspan knew or should have known of Chambers's or Gulf South's lack of competence, summary judgment is due to be granted in favor of Insulspan.

V.    Conclusion.

      For the reasons stated above, defendant Insulspan's motion for

summary judgment is due to be granted in its entirety.   A separate order

in conformity with this opinion will be entered.

Done this 17<u>th</u> day of <u>January 2008</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671